**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SK MD DIDIER HOSSAIN, Individually and on Behalf of All Others Similarly Situated,**<br><br>               **Plaintiff,**<br><br>-against-<br><br>**SANRAJ INC. d/b/a LINDEN MOTOR INN, SAILESH PATEL, FALGUNI "SAM" PATEL, and JOHN DOES #1-3, Jointly and Severally,**<br><br>               **Defendants.** | <u>**COLLECTIVE ACTION COMPLAINT**</u><br><br>**Jury Trial Demanded** |

Plaintiff SK MD Didier Hossain ("Hossain" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.     Defendants own and operate a motel doing business as "Linden Motor Inn," located in Brooklyn, New York.  Linden Motor Inn is one location within a chain of several motels owned and operated by Defendants in the greater New York City area.

2.     Plaintiff is a former janitor, housekeeper and maintenance worker who regularly worked over forty (40) hours per week.  Plaintiff's effective hourly rate fell below the statutory minimum wage, and he was not paid overtime premiums for hours worked in excess of forty (40) hours per week. Plaintiff also did not receive spread-of-hours premiums when he worked in excess of ten (10) hours in a given day.

3.     Plaintiff did not receive a wage notice upon hiring, annually or when his wage rate changed.  The wage statements he received with his weekly wage payments were frequently inaccurate as to his total hours worked.

4.     Plaintiff Hossain brings this action to recover unpaid minimum wage and overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims against Defendants for unpaid spread-of-hours premiums and for failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

5.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and all individuals who join the action pursuant to the FLSA (the "Opt-in Plaintiffs").

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216 (b).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district and Defendants' business is located in this district.

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

9.     Plaintiff SK MD Didier Hossain has been, at all relevant times, an adult individual residing in Brooklyn, New York.

10.     Throughout the relevant time period, Plaintiff performed work for Defendants at Linden Motor Inn, located at 714 S. Conduit Blvd, Brooklyn, NY 11208.

11.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216 (b), and his consent form is attached hereto.

**Defendants:**

12.     Sanraj Inc. d/b/a Linden Motor Inn ("Linden Motor Inn" or the "Corporate Defendant") is an active New York Corporation with its principal place of business at 714 S. Conduit Blvd., Brooklyn, NY 11208.

13.     Defendant Sailesh Patel ("S. Patel") is an owner and operator of the Corporate Defendant who set the Corporate Defendant's payroll polices, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, S. Patel was in charge of determining the Corporate Defendant's polices with respect to payroll, and otherwise running the business of the Corporate Defendant.

14.     Defendant Falguni "Sam" Patel ("F. Patel") is an owner and operator of the Corporate Defendant who set the Corporate Defendant's payroll polices, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, F. Patel was in charge of determining the Corporate Defendant's polices with respect to payroll, and otherwise running the business of the Corporate Defendant.

15.     Defendant John Does #1-3, including "Vin", are (together with S. Patel and F. Patel, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") are managers, owners and operators of the Corporate Defendant who set the Corporate Defendant's payroll polices, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, John Does #1-3 were in charge of determining the Corporate Defendant's polices with respect to payroll, and otherwise running the business of the Corporate Defendant.

16.     The Individual Defendants participated in the day-to-day operation of the Corporate Defendant and acted intentionally and maliciously in their direction and control of Plaintiff and the Corporate Defendant's other similarly situated employees and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

17.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 207 (a).

18.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

19.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

20.     Upon information and belief, at all relevant times, the Corporate Defendant has had gross revenues in excess of $500,000.00.

21.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First and Second Causes of Action as a collective action under the FLSA on behalf of himself and the following collective:

>   All persons employed by Defendants at any time since July 21, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Linden Motor Inn(the "Collective Action Members").

23.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked or overtime premiums payments for all hours worked in excess of forty (40) hours per week.

24.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## STATEMENT OF FACTS

**Defendants' Motel**

25.     At all relevant times, Defendants have been in the motel business.

26.     Linden Motor Inn is open seven (7) days per week, twenty-four (24) hours per day.

27.     In addition to Linden Motor Inn, Defendants own and operate several other motels in and around the New York City metropolitan area and New York state, including Haven Motel, located at 6805 Woodhaven Blvd., Rego Park, New York 11374 and Yankee Clipper Motor Lodge Hotel, located at 295 S. Motor Main St., Freeport, New York 11520.

28.     Upon information and belief, at Linden Motor Inn, Defendants employ approximately twelve (12) employees at any given time.

29.     Upon information and belief, S. Patel is frequently present at the motel and in conjunction with the other Individual Defendants takes an active role in ensuring that the motel is run in accordance with Defendants' established policies and procedures.

30.     F. Patel is a constant presence at the motel, where he supervises employees including Plaintiff, and takes an active role in ensuring that the motel is run in accordance with Defendants' established policies and procedures.

31.     John Does #1-3, including "Vin," are constantly present at the motel, where they supervised employees including Plaintiff and take an active role in ensuring that the motel is run in accordance with Defendants' established policies and procedures.

**Plaintiff's Work for Defendants**

32.     Plaintiff Hossain was employed by Defendants as a janitor, housekeeper and maintenance employee a waiter from in or around June or July 2016 through in or around March 2020 (the "Hossain Employment Period").

33.     Throughout the Hossain Employment Period, Plaintiff typically worked the overnight shift, which typically lasted between ten and twelve (10-12) hours, between the hours of 7:00 pm and 7:00 am. His shift was sometimes as short as ten (10) hours if he was permitted to go home early because business was slow. Plaintiff was typically unable to take any break during his shifts

34.     Between approximately 2016 and 2017, Plaintiff typically worked six (6) days per week or seven (7) days if the motel was short-staffed and he needed to cover for another employee. During this period, he typically worked between fifty and seventy (50-70) hours per week.

35.     Between approximately 2018 and 2020, Plaintiff typically worked six (6) days per week, although occasionally he worked five (5) or seven (7) days. During this period, he typically worked between fifty and sixty (50-60) hours per week and sometimes more.

36.     Throughout the Hossain Employment Period, Plaintiff was typically paid straight-time hourly rates for all hours that appeared on his paystub, including hours worked in excess of forty (40) hours per week. In 2016, Hossain was paid approximately nine dollars ($9.00) per hour. Beginning in or around 2017, Hossain was paid eleven dollars ($11.00) per hour. Beginning in or around 2018, Hossain was paid thirteen dollars ($13.00) per hour. Beginning in 2019 and through the end of his employment, Hossain was paid fifteen dollars ($15.00) per hour. However, Hossain's effective hourly rate fell below these amounts, since he worked a significant number of hours each week for which he was not paid at all.

37.     Plaintiff was frequently instructed by John Doe #1, whom he knew as "Vin," or F. Patel, who he knew as "Sam," not to clock out at the end of his shifts and was told "We will do that for you." However, when Plaintiff complained about being paid for fewer hours than he actually worked, he was told by the Individual Defendants that they would not pay for days when

there was no punch-out on his time card.

38.   Plaintiff frequently noticed when he went to punch out at the end of his shift that his time card was already punched out by his supervisor or manager.

39.   On several occasions, Hossain questioned F. Patel about the reason that his paychecks consistently showed significantly fewer hours than he actually worked.  Each time Hossain asked this question, he was told "If you don't like it, there's the door" or "If you don't like how we pay, you can leave."

40.   It was necessary for Plaintiff to purchase out of pocket a mask that he wore when using certain noxious cleaning supplies. Approximately once per month he purchased a box of disposable masks, which cost approximately fifteen dollars ($15.00). At no time was he reimbursed for the purchase of these masks, which were essential for him to perform his cleaning tasks.

41.   As a result of Defendants' practice of paying Hossain low hourly rates, requiring him to work hours for which he was not paid, and failing to reimburse business expenses, Hossain's effectively hourly rate typically fell below the minimum wage.

42.   Throughout the Hossain Employment Period, Plaintiff was typically paid straight-time rates for all hours that appeared on his paystubs, including hours in excess of forty (40) hours in a given week. Typically, as described in paragraphs 36-39 above, Hossain received no payment at all for a significant number of hours worked each week and did not receive any overtime premiums for hours worked in excess of forty (40) per week.

43.   On approximately two (2) or three (3) occasions, Hossain received one and one-half (1.5) times his hourly rate for a portion of his overtime hours worked. Hossain is not aware of the reason that Defendants paid him some overtime premiums on these two or three occasions.

44.     On at least three (3) occasions, Hossain's paychecks bounced. On the final occasion, in or around March 2020, he complained to "Joel," another manager, that his check bounced.  "Joel" called F. Patel regarding the bounced check.  Later that day, around 3:00 am, "Joel" told Plaintiff Hossain that that day was his last day.  Plaintiff has never received any wages for his final week of work.

45.     Throughout the Hossain Employment Period, Plaintiff frequently worked in excess of ten (10) hours in a given shift. However, at no time did he receive spread-of-hours premiums consisting of one (1) extra hour's pay at minimum wage.

46.     Plaintiff received his wage payment by check each week with a paystub. The paystubs typically showed between thirty (30) and fifty (50) hours per week even though he typically worked between fifty (50) and seventy (70) hours per week. As a result, Hossain's effectively hourly rate fell below the rate set forth on the paystub.

47.     At no time, either when he was hired, annually thereafter or any other time was Plaintiff provided with was never provided a wage notice setting forth his regular and any overtime rates, employer contact information, the frequency of his wage payment, or any other information required by the NYLL.

**Defendants' Unlawful Corporate Policies**

48.     Plaintiff and the Collective Members were all paid by the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, spread-of-hours premiums and failing to provide a wage notice and wage statements.

49.     Plaintiff is aware that Defendants' policies that resulted in unpaid minimum wage, overtime and spread-of-hours were consistent as to all non-management employees.

50.     Upon information and belief, throughout the relevant time period and continuing

until today, Defendants failed to maintain accurate and sufficient time and payroll records, including timekeeping records, wage notices and wage statements, or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

51.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

52.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq*., including 29 U.S.C. §§ 206 and 215(a)(2).

53.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

54.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.  Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

55.     Plaintiff, on behalf of himself and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and

effect as though fully set forth herein.

56.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq*., including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

57.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

58.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiff and Opt-in Plaintiffs)

59.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

60.     Defendants willfully violated Plaintiff's and Opt-in Plaintiffs' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

61.     Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and Opt-in Plaintiffs to suffer loss of wages and interest thereon.  Plaintiffs and the Opt-in Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably

delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff and the Opt-in Plaintiffs)**

62.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

63.     Defendants willfully violated Plaintiff's and the Opt-in Plaintiffs' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

64.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Opt-in Plaintiffs to suffer loss of wages and interest thereon.  Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES
**(Brought on Behalf of Plaintiff and Opt-in Plaintiffs)**

65.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraph hereof with the same force and effect as though fully set forth herein.

66.     Defendants have willfully failed to supply Plaintiff and Opt-in Plaintiffs notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiff and the Opt-in Plaintiffs as their primary language, containing Plaintiff and Opt-in Plaintiffs' rate or rates of pay

and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

67.     Due to Defendants violations of the NYLL, Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants fifty dollars ($50) per employee for each work day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS</u>
### (Brought on Behalf of Plaintiffs and the Opt-in Plaintiffs)

68.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69.     Defendants have willfully failed to supply Plaintiff and Opt-in Plaintiffs with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

70.    Due to Defendants' violations of the NYLL, Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each work day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiff and Opt-in Plaintiffs)

71.    Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

72.    Defendants willfully violated Plaintiff's and the Opt-in Plaintiffs' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Opt-in Plaintiffs worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

73.    Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the Opt-in Plaintiffs to suffer loss of wages and interest thereon.  Plaintiff and the Opt-in Plaintiffs are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Opt-in Plaintiffs, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b. An order tolling the statute of limitations;

c. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e. An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of actual and liquidated damages for non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten (10) hours;

h.  Fifty dollars ($50) per Plaintiff and each of the Opt-in Plaintiffs for each work day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Opt-in Plaintiffs as provided for by NYLL, Article 6 § 198(1)-b;

i.  Two hundred and fifty dollars ($250) per Plaintiff and each of the Opt-in Plaintiffs for each work day that the violations of NYLL § 195(3) occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Opt-in Plaintiffs as provided for by NYLL § 198(1)-d;

j.  An award of prejudgment and post-judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
July 21, 2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com

16

Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative
FLSA Collective*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of SANRAJ INC.  are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of SANRAJ INC., and to charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6)-year period preceding the filing of the complaint.

Services for the above-referenced corporations were terminated by plaintiff in March 2020, within the past 180 days.

Dated: July 21, 2020

Brent E. Pelton, Esq.

*Attorneys for Plaintiff and the putative
FLSA Collective*